**EOD**

04/07/2017

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **LOUIS E. MARTIN, Jr.** | § | Case No. 15-41103 |
| xxx-xx-8794 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| US MERCHANTS FINANCIAL | § | |
| GROUP, INC. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 15-4083 |
| | § | |
| LOUIS E. MARTIN, JR. | § | |
| | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, U.S. Merchants Financial Group,

Inc. ("Plaintiff" or "Merchants"), seeking a determination of whether an alleged debt owed

to it by the Debtor-Defendant, Louis E. Martin, Jr. ("Defendant" or "Martin"), is

dischargeable, the Court issues the following findings of fact and conclusions of law.  The

Plaintiff contends in its complaint that the debt is nondischargeable as a debt obtained by

false pretenses, a false representation or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A),

---

[1]  These findings of fact and conclusions of law are not designated for publication and shall not
considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the
law of the case or as to other applicable evidentiary doctrines.

as a debt arising from a materially false written statement regarding the debtor's financial

condition under § 523(a)(2)(B), and a debt for a willful and malicious injury under

§ 523(a)(6).[2]  After the trial, the Court took the matter under advisement.  This decision

disposes of all issues pending before the Court.

## *FINDINGS OF FACT*

1.    From at least August 2002 through March 2013, Louis E. Martin, Jr., and his
       business partner, Chuck Clark, formed, operated and were officers of 13 Florida
       Companies (collectively the "Martin-Clark Companies").[3]

2.    Each company operated from one of two common Florida addresses and shared
       common officers and registered agents.  Several of the companies sold overlapping
       products such as road flares.[4]

3.    In 2003-2004, the Defendant and Chuck Clark each owned approximately 50% of
       AOS, Inc., a nominee entity that owned 50.0% or 66.7% of Synergy Design
       Group, Inc. ("Synergy").[5]

4.    In 2003-2004 Synergy purchased goods and/or services from Merchants.  The
       purchase price was approximately $278,000.00.[6]

5.    Merchants performed its obligations under the contract.[7]

---

[2]  The Plaintiff expressly abandoned its causes of action under 11 U.S.C. § 727(a)(3) and (a)(5) in
the approved Joint Pre-Trial Order ("PTO") entered in this adversary proceeding on December 16, 2016.

[3]  Stipulation of fact #1, PTO at 2.  This is the first of several factual stipulations by the parties
that were set forth in the approved Joint Pre-Trial Order.

[4]  *Id.*

[5]  Stipulation of fact #2.

[6]  Stipulation of fact #3.

[7]  *Id.*

6.     Synergy paid approximately $6,700 to Merchants but failed to pay the remainder of the balance due.[8]

7.     On March 15, 2004, Merchants sued Synergy in Los Angeles County, California Superior Court.[9]

8.     On August 16, 2004, Merchants obtained a default judgment in its favor against Synergy for actual damages in the amount of $271,679.00, plus $296.50 in costs, together with post-judgment interest accruing at 10% per annum (the "Synergy Judgment").[10]

9.     In its 2004 suit, Merchants did not seek, nor did it receive any recovery against Martin in his individual capacity.[11]

10.    In 2004, Martin was a resident of Stuart, Florida.[12]

11.    In approximately August 2009, Martin moved to The Colony, Texas.  At that time, he was a 50% owner of a company known as Total Flare, Inc.[13]

12.    On June 2, 2010, Merchants filed suit against Martin in Superior Court in California alleging Martin to be an alter ego of the judgment debtor, Synergy.  The Merchants suit against Martin in California was dismissed for lack of personal jurisdiction.[14]

13.    On December 8, 2010, Merchants filed suit against Martin in the 134th District Court in and for Dallas County, Texas (the "State Court Litigation").  Martin was served with citation on or about January 20, 2011.[15]

---

[8]  Stipulation of fact #4.

[9]  *Id.*

[10]  *Id.*

[11]  Stipulation of fact #5.

[12]  Stipulation of fact #6.

[13]  Stipulation of fact #7.

[14]  Stipulation of fact #8.

[15]  Stipulation of fact #9.

14.    The Plaintiff's state court petition alleged that Synergy was Martin's alter ego that Martin used to perpetrate a fraud upon Merchants and that Martin should be held personally liable for the Synergy Judgment.[16]

15.    The state court trial between the Plaintiff and the Defendant in the State Court Litigation before the 134th Judicial District Court was conducted on March 26-27, 2013.[17]

16.    The state court conducted a full evidentiary trial with consideration of all evidence in favor of the Plaintiff as well as the evidence supporting the defenses of the Defendant.

17.    On or about April 11, 2013, the 134th Judicial District Court entered judgment for Merchants piercing the corporate veil against Martin as a shareholder of Synergy pursuant to Texas Business and Organizations Code 21.223(b) (the "State Court Judgment").[18]

18.    On April 11, 2013, the 134th Judicial District Court entered formal findings of fact and conclusions of law in support of the State Court Judgment in which, among other factual findings, it specifically found that:

(a)    In late 2003, Synergy engaged in a one-time transaction by which it sold a large shipment of Turboflare 360 road flares to Sam's Club;[19]

(b)    Merchants provided a specific kind of packaging required by Sam's Club;[20]

(c)    Sam's Club introduced Synergy to Merchants and instructed Synergy that it should use Merchants to provide packaging for the products that were the subject of the Sam's Club transaction;[21]

---

[16] Ex. 3 at 2.

[17] Stipulation of fact #10.

[18] *Id.*

[19] Ex. 4 at ¶ 9.

[20] *Id.*

[21] *Id.*

(d)     During the time period September 17-22, 2003, Martin personally discussed the terms of the transaction with Merchants' Director of Sales, Doug Farrell ("Farrell");[22]

(e)     In soliciting the transaction at issue on behalf of Synergy, Martin specifically held himself out to Farrell, verbally and in writing, as Synergy's chief executive officer and "C.E.O." on several occasions;[23]

(f)     Martin admitted at [the state court] trial that he was not the CEO of Synergy and that it would be "false" if he had in fact represented himself to be the CEO of Synergy (the uncontroverted evidence established that he did) in soliciting business from Merchants;[24]

(g)     While Martin was holding himself out to Merchants as Synergy's C.E.O., Martin negotiated on behalf of Synergy the terms of the contract from which the subject debt [the Synergy Judgment] arises;[25]

(h)     Martin deceptively represented to Merchants that Synergy's profit margin on the Sam's Club transaction was very thin in order to negotiate better terms;[26]

(i)     Martin testified that Synergy's profit margin on the Sam's Club transaction was actually in the range of 25% to 50%;[27]

(j)     Before Merchants would agree to provide the services and credit terms requested by Martin, Farrell's supervisor, Jeff Green (the president of Merchants), instructed Farrell to confer with Martin and confirm Synergy's creditworthiness and ability to pay for the requested services;[28]

---

[22]  Ex. 4 at ¶ 10.

[23]  *Id.*

[24]  *Id.*

[25]  Ex. 4 at ¶ 11.

[26]  *Id.*

[27]  *Id.*

[28]  *Id.*

(k)    To induce Merchants to provide services on credit, Martin, in his capacity as Synergy's CEO, personally assured Farrell that:

   (1) Martin would personally oversee the relationship;
   (2) Synergy was financially strong and had sufficient revenue and assets on hand to pay the anticipated charges at the time the parties entered into the relationship;
   (3) Synergy would promptly pay Merchants for the work and Merchants had nothing to worry about; and
   (4) Merchants had Martin's "personal assurance" that the debt would be paid;[29]

(l)    Farrell testified without contest that Martin's representations about Synergy's finances and personal assurances of payment, and the fact that Martin held himself out to be CEO of Synergy, were material to Merchants decision to extend credit to Synergy and that Merchants would not have extended credit or proceeded on the agreed terms but for Martin's personal representations and assurances;[30]

(m)    Despite having ample opportunity to do so, Martin did not once deny making the critical representations relating to himself and Synergy's purported financial status.  Thus, Farrell's testimony about Martin's deceptive pre-contractual conduct is entirely undisputed;[31]

(n)    The evidence proves that Martin made those representations for the purpose of inducing Merchants to provide essential packaging services that would enable Martin and his business partners to consummate a large transaction that would generate multiple millions of dollars in revenue and hundreds of thousands of dollars in resulting profits for Synergy and its owners, including Martin personally;[32]

(o)    By early January 2004, Merchants had provided all of the agreed services and invoiced Synergy for the outstanding balance [but] Synergy only remitted $6,773, leaving a remaining balance of $271,679 as of January 5,

---

[29] Ex. 4 at ¶ 12.

[30] Ex. 4 at ¶ 13.

[31] *Id*.

[32] *Id*.

2004 which was never paid;[33]

(p)     Martin's written post-transaction representations to Merchants regarding Synergy's financial status and ability to pay, primarily contained in a February 17, 2004 email, are directly contrary to the undisputed representations that Martin made to Farrell before the transactions;[34]

(q)     Farrell testified — again without contest — that if Martin would have advised Merchants at the outset of the transaction that Synergy was a "smaller company" whose ability to pay depended on receiving payment from its customer, Merchants would not have extended credit or proceeded on the agreed terms;[35]

(r)     [Contrary to Martin's post-transaction representations to Merchants], during the 34-day period immediately preceding Martin sending of this [February 17th] email, Synergy made significant cash deposits into its operating account totaling $864,051.95, including a $232,575.33 cash deposit noted as "sams payment" on January 15, 2004 and a $631,476.62 cash deposit from "Sales" on February 12, 2004;[36]

(s)     [Contrary to his post-transaction representations to Merchants],  Martin personally received at least $450,432 in distributions from Synergy over the seven months from Sept. 1, 2003 through Mar. 31, 2004 – far more money than was owed to Merchants;[37]

(t)     Martin engaged in conduct constituting "actual fraud" as defined by Section 21.223(b) [of the Texas Business Organizations Code][38] — i.e., conduct that

---

[33]  Ex. 4 at ¶ 15.

[34]  Ex. 4 at ¶ 17.

[35]  *Id.*

[36]  Ex. 4 at ¶ 18.

[37]  Ex. 4 at ¶ 21.

[38]  Section 21.223(b) provides that the corporate veil can be pierced to assess a corporate liability against a shareholder or beneficial owner if the obligee demonstrates that the holder "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder. . . ."  2 TEX. BUS. ORGS. CODE ANN.

was dishonest in purpose or intended to deceive — by, at the outset of the relationship, making false and misleading representations to Merchants including:

(1) that Martin was Synergy's "C.E.O." and the highest ranking officer in charge of running the company;

(2) that Martin in his capacity as "C.E.O." would personally oversee the relationship;

(3) that Synergy was financially strong and had sufficient revenue and assets on hand to pay the anticipated charges at the time the parties entered into the relationship;

(4) that Synergy would promptly pay Merchants for the work; and

(5) that Merchants had Martin's "personal assurance" that the debt would be paid;

Each of the foregoing representations were (sic) false;[39]

(u)   Martin deceptively represented and misrepresented Synergy's financial inability to pay Merchants for the services Merchants provided;[40]

(v)   Synergy had cash available to pay Merchants' invoices, yet chose to distribute the cash assets to the owners of Synergy, including Martin;[41] and

(w)   Martin, acting in his capacity as an officer and stockholder of Synergy,

---

§ 21.223(b) (Vernon 2012).  *See also* Ex. 4 at ¶¶ 31-36 [conclusions of law regarding disregard of corporate entity].

[39] Ex. 4 at ¶ 37.  Though items (t) through (w) and ¶ 19 were listed as conclusions of law in Exhibit 4, they are mixed questions of law and fact and are therefore subject to the restraint of collateral estoppel. *Ackerman v. American Airlines, Inc.*, 924 F. Supp. 749, 754 (N.D. Tex. 1995) *(citing United States v. Stauffer Chemical Co.*, 464 U.S. 165, 170–71 (1984)).  ["Collateral estoppel may apply to preclude re-litigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action."].

[40] Ex. 4 at ¶ 38.

[41] *Id.*

-8-

misused Synergy's corporate fiction to defraud Merchants and evade a legitimate obligation for Martin's personal benefit.[42]

19.   The 134th Judicial District Court ultimately concluded that:

> Because Martin caused Synergy to be used for the purpose of perpetrating a fraud and did perpetrate an actual fraud on Merchants primarily for the direct personal benefit of Martin who, in 2004, personally received hundreds of thousands of dollars in cash distributions from Synergy that otherwise would have been available to pay Merchants debt, Merchants is entitled to pierce the corporate veil and hold Martin personally liable as a shareholder of Synergy for the principal amount of Merchants' unsatisfied judgment against Synergy plus accrued and unpaid post-judgment interest.[43]

20.   On July 8, 2013, the Debtor initiated an appeal of the State Court Judgment.[44]

21.   On October 4, 2013, the Debtor filed an affidavit stating that he had a negative net worth in order to appeal without posting a bond.[45]

22.   Upon appeal, the State Court Judgment was affirmed by the Texas Court of Appeals for the Fifth District of Texas in Dallas on December 8, 2014.[46]

23.   Thus, Merchants is a creditor of Martin by virtue of the State Court Judgment.

24.   Martin filed his petition for relief under Chapter 7 of the United States Bankruptcy Code in this Court on June 18, 2015.[47]

---

[42] *Id.*

[43] Ex. 4 at ¶ 40.

[44] Stipulation of fact #12.

[45] *Id.*

[46] *Id.*

[47] Stipulation of fact #13.

25.    Merchants timely filed its Complaint to Determine Dischargeability of Debt and
       Objection to Discharge on September 15, 2015, seeking, as amended by the Joint
       Pretrial Order,[48] to except its claim arising from the State Court Judgment from the
       scope of any discharge otherwise granted to Martin.

26.    The vast majority of the factual and/or legal issues raised by Martin in his defense
       before this Court were, or should have been, presented in the State Court Litigation
       for determination.  The presentation of such issues constitute an impermissible
       collateral attack upon the factual determinations arising from the State Court
       Litigation.  *Browning v. Prostock*, 165 S.W.3d 336, 346 (Tex. 2005); *Union
       Planters Bank Nat. Ass'n v. Salih,* 369 F.3d 457, 462 (5th Cir. 2004).  These issues
       include, but are not limited to:

       (a)    whether Martin's misrepresentation that he was the CEO of Synergy was
              material to the actual fraud found by the state court to have been committed
              by Martin;

       (b)    whether Martin's misrepresentation that he was the CEO of Synergy was
              communicated by him with an intent to deceive Merchants and to induce its
              reliance upon the misrepresentation;

       (c)    whether Merchants relied upon Martin's misrepresentation that he was the
              CEO of Synergy; and

       (d)    whether the liability for the Synergy Judgment imposed upon Martin in the
              State Court Litigation was properly based upon Merchants' reliance on
              Martin's misrepresentations;

27.    The parties in this adversary case are identical to those in the State Court
       Litigation.

28.    The issues as determined by the 134th Judicial District Court in the State Court
       Litigation were essential to that court's judgment.

---

[48]  As previously noted, Merchants' claims under § 727(a) were legally abandoned in the Joint
Pre-Trial Order.  *Kona Technology Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595, 604 (5th Cir.
2000) ["It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings
and governs the issues and evidence to be presented at trial."]; *see also Moser v. Mullican (In re
Mullican)*, 2008 WL 5191196 at *12 (Bankr. E.D. Tex., Sept. 30, 2008), citing *Elvis Presley Enters. v.
Capece*, 141 F.3d 188, 206 (5th Cir. 1998) [noting that "a claim or defense not raised in the pre-trial order
may be deemed waived, even if it appeared in the complaint"].

29.   All of the issues as determined by the 134th Judicial District Court were fully and fairly litigated in the State Court Litigation.

30.   Accordingly, Martin is collaterally estopped from relitigating those factual determinations that necessarily support the judgment issued in the State Court Litigation.

31.   With specific reference to the facts germane to a § 523(a)(2)(A) nondischargeability determination, Martin is thus barred by the principles of collateral estoppel from relitigating the factual determinations arising from the State Court Litigation including the following:

(a)   Martin knowingly made a false representation to Merchants regarding his management role with Synergy and his degree of managerial control over its financial activities and performance;

(b)   Martin knowingly made a false representation to Merchants regarding his management role with Synergy and the degree to which he could provide personal oversight over the performance of its contractual obligations toward Merchants;

(c)   Martin knowingly made a false representation to Merchants regarding his management role with Synergy and the certainty with which he could provide personal assurances to Merchants that its invoices would be promptly paid;

(d)   Martin knowingly made those false representations to Merchants "for the purpose of inducing Merchants to provide essential packaging services that would enable Martin . . . to consummate a large transaction that would generate multiple millions of dollars in revenue and hundreds of thousands of dollars of resulting profits for Synergy and its owners, including Martin personally;"

(e)   Martin's knowingly false representations were material to Merchants;

(f)   Martin's knowingly false representations induced Merchants to enter into the contractual relationship with Synergy;

(g)   Merchants justifiably relied upon Martin's knowingly false representations and would not have extended credit to Synergy but for Martin's false representations.

(h)     Martin is personally liable for the unsatisfied awards contained in the Synergy Judgment pursuant to the State Court Judgment.

32.     In each respect , such false representations by Martin constitute a knowing and fraudulent falsehood conveyed to Merchants that described past or current facts.

33.     Merchants justifiably relied upon the false representations of Martin to its detriment.

34.     To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## *CONCLUSIONS OF LAW*

1.     The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. § 1334 and § 157.

2.     This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3.     In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard.  *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

4.     "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."  *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)).

5.     The fact that there is a debt owing by the Defendant to the Plaintiff is established through the factual findings and judgment issued in the State Court Litigation. However, this Court retains exclusive jurisdiction to determine whether that debt is dischargeable.  *Grogan v. Garner*, 498 U.S. 279, 285, n.11, (1991); *Fielder v. King (Matter of King),* 103 F.3d 17, 19 (5th Cir. 1997).

*Collateral Estoppel*

6.     "Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that
       when an issue of ultimate fact has once been determined by a valid and final
       judgment, that issue cannot again be litigated between the same parties in any
       future lawsuit.'" *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations
       omitted).

7.     In other words, "once an issue is actually and necessarily determined by a court of
       competent jurisdiction, that determination is conclusive in subsequent suits based
       on a different cause of action involving a party to the prior litigation." *Montana v.
       U. S.*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S.
       322, 326 n. 5 (1979)).

8.     "To preclude parties from contesting matters that they have had a full and fair
       opportunity to litigate protects their adversaries from the expense and vexation
       attending multiple lawsuits, conserves judicial resources, and fosters reliance on
       judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-
       54.

9.     In the bankruptcy dischargeability context, "parties may invoke collateral estoppel
       in certain circumstances to bar re-litigation of issues relevant to dischargeability"
       and satisfy the elements thereof. *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264
       (5th Cir. 2005) (quotation marks omitted).

10.    In other words, when an issue that forms the basis for the creditor's theory of non-
       dischargeability has been actually litigated in a prior proceeding, neither the
       creditor nor the debtor may relitigate those grounds. *RecoverEdge, L.P. v.
       Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).

11.    While the doctrine of issue preclusion applies in bankruptcy dischargeability
       litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a
       debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).

12.    The inquiry into the preclusive effect of a state court judgment is guided by the full
       faith and credit statute, which states that "judicial proceedings . . . shall have the
       same full faith and credit in every court within the United States . . . as they have
       by law or usage in the courts of such State . . . from which they are taken." 28
       U.S.C. § 1738 (1994).

13.    Thus, federal courts look to the principles of issue preclusion utilized by the forum

state in which the prior judgment was entered.  *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

14.  Because the judgment against the Defendant was entered in a Texas state court, this Court applies the Texas law of issue preclusion.  *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

15.  The doctrine of collateral estoppel (issue preclusion) "is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994); *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex. 1988).

16.  "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Eagle Properties, Ltd., v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991); *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

17.  Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case.  *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App. – Dallas 2012, no pet.).

18.  "Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

19.  For the purposes of collateral estoppel under Texas law, an issue was "actually litigated" when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined.  *Id.*, citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (1982); *In re Calderon*, 96 S.W.3d 711, 721 (Tex. App. – Tyler 2003, orig. proceeding).

20.  In the context of issue preclusion, "issue" and "fact" are interchangeable.  The purpose of the reviewing court is to determine the specific facts brought that were already established through full and fair litigation.

-14-

21.   As stated in the Fifth Circuit decision in *Fielder v. King (Matter of King),* 103 F.3d
      17, 19 (5th Cir. 1997):

>   Issue preclusion will prevent a bankruptcy court from
>   determining dischargeability issues for itself only if 'the first
>   court has made *specific, subordinate, factual findings* on the
>   identical dischargeability issue in question . . . and the facts
>   supporting the court's findings are discernible from that
>   court's record"], citing *Dennis v. Dennis (Matter of Dennis),*
>   25 F.3d 274, 278 (5th Cir. 1994) ["Collateral estoppel applies
>   in bankruptcy courts only if, inter alia, the first court has
>   made . . . factual findings on the identical dischargeability
>   issue in question – that is, an issue which encompasses the
>   same prima facie elements as the bankruptcy issue."]
>   (emphasis added)).

22.   As the party asserting the preclusive effect of the findings arising from the State
      Court Litigation, Merchants has the burden of proof on all elements of collateral
      estoppel.

23.   The State Court Judgment was rendered on the merits after a contested trial by the
      134th Judicial District Court and is now a final judgment.

24.   The rendition of the State Court Judgment in favor of Merchants and against
      Martin, rendering Martin personally liable for the Synergy Judgment, was affirmed
      on appeal.


*Nondischargeability Under 523(a)(2)(A):  Debt Arising*
*by Fraud, False Pretenses, or False Representation.*

25.   The Plaintiffs' Complaint seeks a determination that the debt owed to each of them
      should be excepted from discharge under § 523(a)(2)(A) as a debt obtained by
      false pretenses, a false representation or actual fraud.

26.   11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code provides that:

>   a discharge under § 727 of this title does not discharge an
>   individual debtor from any debt for money, property, or
>   services, ... to the extent obtained by false pretenses, a false
>   representation, or actual fraud, other than a statement
>   respecting the debtor's or an insider's financial condition.

**-15-**

27.    Though the state court determined that Martin committed "actual fraud" against Merchants for the purpose of piercing the corporate veil and held him personally liable for Synergy's obligation to Merchants under § 21.223(b) of the Texas Business Organizations Code,[49] that term has a different meaning under § 523(a)(2)(A) of the Bankruptcy Code and the conclusions of law issued in the prior state court determination have no effect upon the determination of the legitimacy of Merchants' nondischargeability claim.

28.    Nevertheless, proper grounds for a determination of nondischargeability under § 523(a)(2)(A) may be established if the factual determinations reached in the State Court Litigation are sufficient to meet those requirements.

29.    Section 523(a)(2)(A) of the Bankruptcy Code encompasses similar but distinct causes of action.  Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[50] the Fifth Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations."  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

30.    The distinction recognized by the Fifth Circuit appears to be a chronological one — resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact.  *Bank*

---

[49]  Though not actually defined in § 21.223(b), Texas courts have concluded that the "actual fraud" necessary to establish the right to pierce the corporate veil involves "dishonesty of purpose or intent to deceive" and requires a demonstration that a corporate shareholder, beneficial owner or affiliate perpetrated an actual fraud on the corporation's obligee for his direct personal benefit.  *See, e.g., TransPecos Banks v. Strobach*, 487 S.W.3d 722, 731-32 (Tex. App. —El Paso 2016, no pet.) and cases cited therein.

[50]  *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987).  Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351(1995), in support of their proposition that all of the § 523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in § 523(a)(2)(A) from that utilized in § 523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A). Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of  reliance in actual fraud cases to cases of false pretense or false representation, 116 S.Ct. at 443, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

of *La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) [A debtor's promise ... related to a future action which does not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense].

31.     Because the knowingly false representations by Martin regarding his management role with Synergy, his degree of managerial control over its performance of its contractual obligations, and the certainty with which he could assure Merchants that its invoices would be promptly paid each regarded a past or existing fact, none of the respective statements can be properly characterized as "actual fraud" for the purposes of § 523(a)(2)(A) under the controlling jurisprudence of this Circuit.[51]

32.     Thus, the validity of Merchants' claim under § 523(a)(2)(A) in this case rests upon sufficient proof that the debt was obtained by a false representation or false pretense.

33.     While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement.  *See FNFS, Ltd. v. Harwood (In re Harwood),* 404 B.R. 366, 389 (Bankr. E.D. Tex. 2007); *Wallace v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007).

34.     In order for a debtor's representation to constitute a false pretense or a false representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party."[52] *RecoverEdge L.P.,* 44 F.3d at 1292-93; *Allison v. Roberts (In re Allison)*, 960 F.2d

---

[51]  To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

[52]  Though the Supreme Court in *Field v. Mans* avoided a determination of the degree of reliance required in a false pretense or false representation case, it is reasonable to assume that justifiable reliance, in addition to reliance in fact, is the correct level of reliance required to sustain a finding of nondischargeability in a false pretense or false representation case.  *Turbo Aleae Inv., Inc. v. Borschow (In re Borschow)*, 454 B.R. 374, 396 (Bankr. W.D. Tex. 2011);  *Sears, Roebuck & Co. v. Hernandez (In re Hernandez)*, 208 B.R. 872, 876 n.4 (Bankr. W.D. Tex. 1997).

481, 483 (5th Cir. 1992); *see also Bercier*, 934 F.2d at 692 ["to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses must encompass statements that falsely purport to depict current or past facts"].

35.     The degree of reliance otherwise required under § 523(a)(2)(A) of the Bankruptcy Code is justifiable reliance. *Field v. Mans*, 516 U.S. 59, 70-71 (1995).

36.     "Justifiable reliance requires proof that a plaintiff *actually relied* upon the defendant's false representations and that such reliance was justified under the circumstances." *First Horizon Home Loan Corp. v. Apostle (In re Apostle)*, 467 B.R. 433, 443 (Bankr. W.D. Mich. 2012) (emphasis in original).

37.     "Justifiable reliance is a less demanding standard than reasonable reliance." *First American Title Ins. Co. v. Lett (In re Lett)*, 238 B.R. 167, 186 (Bankr. W.D. Mo. 1999).

38.     Justifiable reliance does not require a plaintiff to demonstrate reasonableness nor does it impose a duty to investigate unless the falsity is readily apparent.

39.     "Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard." *Guion v Sims (In re Sims)*, 479 B.R. 415, 425 (Bankr. S.D. Tex. 2012) (citing *Field v. Mans*, 516 U.S. at 71).

40.     It incorporates "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct in all cases." *Field*, 516 U.S. at 70-71.

41.     "The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted." *Manheim Auto. Fin. Svcs., Inc. v. Hurst (In re Hurst)*, 337 B.R. 125, 133-34 (Bankr. N.D. Tex. 2005).

42.     The expressly false statements of fact admittedly made by Martin to Merchants about then-current facts which the state court subsequently found were knowingly made by Martin for the purpose of inducing Merchants to enter into the Synergy transaction each constituted a false representation for the purposes of 11 U.S.C. § 523(a)(2)(A).

43.   The balance of the Synergy Judgment debt due and owing by the Defendant, Louis
      E. Martin, Jr., to the Plaintiff, US Merchants Financial Group, Inc., as established
      by the judgment issued in the State Court Litigation, together with assessed court
      costs accrued in this action in the amount of $350.00, is therefore excepted from
      discharge pursuant to 11 U.S.C. § 523(a)(2)(A) as a debt obtained by false
      representations.[53]

44.   To the extent any of these conclusions of law constitute findings of fact, the Court
      expressly adopts them as such.

45.   An appropriate judgment shall be entered consistent with these findings and
      conclusions.


                    Signed on 04/07/2017


                    _____

                    THE HONORABLE BILL PARKER
                    UNITED STATES BANKRUPTCY JUDGE

---

[53] Accordingly, the Court need not reach the issues and arguments presented with respect to the
alleged nondischargeability of this debt under other subsections of § 523(a).

-19-